UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

EXPERT MICROSYSTEMS, INC.,

    Plaintiff,

  v.

UNIVERSITY OF CHICAGO and ARCH DEVELOPMENT CORPORATION,

    Defendants.

_____/

NO. CIV. 09-586 WBS JFM

MEMORANDUM AND ORDER RE: MOTION TO TRANSFER VENUE OR IN THE ALTERNATIVE TO DISMISS FOR LACK OF PERSONAL JURISDICTION

----oo0oo----

Expert Microsystems Inc. ("EM") brought this action against the University of Chicago ("UC") and ARCH Development Corporation ("ARCH") for correction of inventorship, 35 U.S.C. § 256, and ownership of United States Patent Numbers 5,987,399 ("'399 patent") and 6,202,038 ("'038 patent"). Defendants now move to transfer venue pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to dismiss for lack of personal jurisdiction as to ARCH pursuant to Federal Rule of Civil Procedure 12(b)(2).

I.   <u>Factual and Procedural Background</u>

Plaintiff is a California corporation, currently comprised of four employees, that provides systems for monitoring

1

assets and equipment as well as related consulting services. (First Am. Compl. ("FAC") ¶ 1; Bickford Decl. ¶ 8.) Its principal place of business is Orangevale, California, where its president, Randall L. Bickford, works. (FAC ¶ 1; Bickford Decl. ¶ 2.) Plaintiff is the successor entity to ExperTech--a sole proprietorship of Bickford--which was part of a joint venture created to obtain prime contracts with NASA.[1] (FAC ¶ 25.) In 1996, NASA awarded the joint venture a prime contract for a project entitled "Dynamics Sensor Data Validation for Reusable Launch Vehicle Propulsion" that involved UC as a subcontractor. (Id. ¶¶ 34, 41.) The relationship between ExperTech/EM and UC continued for a number of years and involved multiple cooperative research and development agreements and a contract by which plaintiff acquired rights to software products and embodiments of the '399 and '038 patents ("203 contract"). (See id. ¶ 47.)

From 1995 through 1996, as part of the process of preparing the proposal for the NASA contract, Bickford allegedly disclosed proprietary information to UC employees Stephan W. Wegerich and Kenneth C. Gross concerning his concept for a method of performing a regression sequential probability ratio testing ("regression SPRT") procedure for a pair of sensors with signals that are linearly or non-linearly related. (Id. ¶¶ 32-33, 35, 44.) One such disclosure occurred in January 1996 when Wegerich and Gross traveled to Roseville, California, to meet with

---

[1] On May 1, 1996, ExperTech incorporated in California as "Expert Microsystems, Inc.," and the successor entity acquired ExperTech's property rights and assumed the obligations of ExperTech. (FAC ¶¶ 37-38.) In addition, on September 27, 1996, EM was assigned all of ExperTech's rights and obligations under the joint venture's NASA contracts. (Id. ¶ 42.)

2

Bickford at ExperTech's offices. (Id. ¶ 32.) Plaintiff alleges that at least part of the embodiments of Bickford's regression SPRT procedure are claimed in one or both of the '399 and '038 patents, which are directed to a method and apparatus for monitoring a source of data for determining an operating state of a working system. (Id. ¶¶ 23, 36, 45.)

The '399 and '038 patents--issued on November 16, 1999, and March 13, 2001, respectively--list only Wegerich, Gross, and another person, Kristin K. Jarman, as inventors without naming Bickford. (Id. ¶¶ 16, 19, 46.) The listed inventors assigned ownership of the '399 and '038 patents to defendant ARCH, an affiliate of UC tasked with commercializing intellectual property produced by UC scientists. (Id. ¶¶ 17, 20; Thomas Decl. ¶ 2.) Plaintiff filed the instant action on March 2, 2009, alleging that Bickford invented or co-invented at least part of the embodiments of the '399 and '038 patents. (See FAC ¶¶ 24, 55.)

This action is not the first to arise out of the parties' exchange of information during their business relationship under the NASA contract. In August 2007, plaintiff filed an action in Illinois state court in which it alleges that UC breached two cooperative research and development agreements and misappropriated trade secrets. (Fagel Decl. Ex. B at 2-3.) Then, on December 5, 2008, plaintiff filed a complaint in a California state court alleging breach of the 203 contract and fraud against UC, ARCH, and related entities. (Id. Ex. C at 7:20, 26:5-7, 38:18-20.) Finally, on December 22, 2008, plaintiff filed a separate action in Illinois state court against UC and ARCH for misappropriation of trade secrets. (Id. Ex. D at

3

35.)  On February 17, 2009, defendants proposed that these three actions be consolidated before an Illinois state court.  (Id. ¶ 4.)  Although plaintiff rejected the proposal to consolidate the three actions, on June 11, 2009, an Illinois state court transferred the two Illinois actions to the same judge for consideration of consolidation.  (Defs.' Reply Ex. B at 5.)

Defendants now move to transfer venue to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to dismiss defendant ARCH for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

II. Discussion

  A. Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).[2]  Under § 1404(a), a district court "has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)) (internal quotation marks omitted).  To undertake this analysis of "convenience" and the

---

[2] The parties do not dispute that this case could have been brought in the Northern District of Illinois, as both defendants appear to be subject to personal jurisdiction in that district.  See 28 U.S.C. 1391(c) ("For purposes of venue . . . , a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.").

4

"interest of justice," a district court may weigh "multiple factors," including the plaintiff's choice of forum, the contacts relating to the plaintiff's cause of action in the chosen forum, the convenience of the parties and witnesses, and the ease of access to sources of proof.[3]  Id. at 498-99; see DeFazio v. Hollister Employee Share Ownership Trust, 406 F. Supp. 2d 1085, 1088-89 (E.D. Cal. 2005) (Karlton, J.).

"No single factor is dispositive and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." Ctr. for Biological Diversity v. Kempthorne, No. 08-1339, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008) (citing Stewart Org. Inc., 487 U.S. at 29; Sparling v. Hoffman Constr. Co., Inc., 964 F.2d 635, 639 (9th Cir. 1988)). Ultimately, the party moving for a transfer of venue under § 1404(a) "bears the burden to show that another forum is more convenient and serves the interest of justice." F.T.C. v. Watson Pharm., Inc., 611 F. Supp. 2d 1081, 1086 (C.D. Cal. 2009) (citing GNC Franchising, 211 F.3d at 499).

1. Plaintiff's Choice of Forum

The plaintiff's choice of forum is ordinarily entitled to great weight. DeFazio, 406 F. Supp. 2d at 1088 (citing Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987)). When there is an indication that the plaintiff's choice resulted from forum

---

[3] Other factors considered by courts include the availability of compulsory process to compel attendance of unwilling non-party witnesses, the location where relevant agreements were negotiated and executed, the state that is most familiar with the governing law, the differences in the costs of litigation in the two forums, the presence of a forum selection clause, and the relevant public policy of the forum state. GNC Franchising, 211 F.3d at 498-99.

5

shopping, however, the "plaintiff's choice will be accorded little deference." <u>Williams v. Bowman</u>, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001); <u>see</u> <u>Belzberg</u>, 834 F.2d at 739 (noting that a plaintiff's chosen venue is accorded only minimal deference if the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter of the litigation). Defendants argue that plaintiff's choice of forum is not entitled to any deference because the filing of concurrent cases in Illinois and California state courts, coupled with plaintiff's refusal to consolidate those actions, demonstrates that the instant action is part of a larger strategy of harassment and forum shopping. (Defs.' P. & A. 15:26-16:4.)

Defendants' argument focuses chiefly on the alleged similarities between the actions pending before the California and Illinois state courts. (<u>Id.</u> at 10:11-11:5.) Contentions regarding the degree of relatedness of those state court actions, however, do not support the argument that plaintiff's choice of forum in the <u>instant action</u> qualifies as forum shopping. Because civil actions "arising under any Act of Congress relating to patents" lie within the exclusive original jurisdiction of federal district courts, 28 U.S.C. § 1338(a), the patent law claims in this case simply could not have been asserted in the earlier-filed state court actions, even if those actions also involve Bickford's regression SPRT procedure.[4] Plaintiff's decision to file the instant action in a new forum thus does not

---

[4] The parties dispute the degree to which the claims at issue in the concurrent state court actions are in fact related to plaintiff's instant patent law claims. (Pl.'s Opp'n 10:25-27, 14:16-20; Defs.' Reply 4:7-22.)

6

suggest improper forum shopping.

Further, plaintiff's selection of a California forum does not bear other indicia of improper forum shopping, such as a lack of a connection between the forum and the parties or the conduct underlying the claims. Rather, plaintiff filed this action in the district of its principal place of business. See Cardoza v. T-Mobile USA Inc., No. 08-5120, 2009 WL 723843, at *3 (N.D. Cal. Mar. 18, 2009) ("A plaintiff's decision to sue in the forum where its company is based does not amount to impermissible forum shopping." (citing Stomp, Inc. v. NeatO, LLC, 61 F. Supp. 2d 1074, 1082 (C.D. Cal. 1999))); see also Warfield v. Gardner, 346 F. Supp. 2d 1033, 1044 (D. Ariz. 2004) ("In the context of a motion to transfer venue, Plaintiff's choice of his home forum is to be given 'substantial deference.'" (quoting Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 52 (D.D.C. 2000))). The conduct underlying plaintiff's claims, such as Bickford's alleged contributions to the conception of the inventions at issue, also occurred in this district. (FAC ¶¶ 32-33; Bickford Decl. ¶ 20.)

The record therefore does not show that plaintiff has engaged in improper forum shopping, and plaintiff's choice of forum is therefore entitled to deference.

    2. <u>Convenience</u>

To show the greater convenience of the prospective transferee court to potential witnesses, the "'moving party is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include.'" CE Res., Inc. v. Magellan Group, LLC, No. 08-02999, 2009 WL 2031721, at *7 (E.D. Cal. July 8, 2009) (England, J.)

1  (quoting <u>Florens Container v. Cho Yang Shipping</u>, 245 F. Supp. 2d
2  1086, 1093 (N.D. Cal. 2002)); <u>see</u> <u>Saleh v. Titan Corp.</u>, 361 F.
3  Supp. 2d 1152, 1161 (S.D. Cal. 2005) (noting that the court must
4  consider the importance of the witnesses in assessing their
5  relative convenience (citing, <u>inter alia</u>, <u>Gates Learjet Corp. V.
6  Jensen</u>, 743 F.2d 1325, 1335-36 (9th Cir. 1984))).  This analysis
7  considers the convenience of all potential witnesses, though the
8  convenience of party witnesses and employee witnesses does not
9  weigh as heavily as that of non-party witnesses.  <u>See</u> <u>W.
10 Oilfields Supply Co. v. Goodwin</u>, No. 07-1863, 2009 WL 161068, at
11 *4 (E.D. Cal. Jan. 22, 2009) (Ishii, C.J.); <u>Raynes v. Davis</u>, No.
12 05-6740, 2007 WL 4145102, at *3 (C.D. Cal. Nov. 19, 2007).

13         In support of transfer, defendants have listed a
14 variety of individuals who may provide testimony concerning the
15 inventive efforts underlying the patents at issue.  (Defs.' P. &
16 A. 19:10-25; Thomas Decl. ¶¶ 7-13.)[5]  At least in part, however,
17 defendants' list does not adequately identify the potential
18 witnesses.  Specifically, defendants have listed an unspecified

---

[5]  Plaintiff objects to the declaration of Alan Thomas on the grounds that Thomas lacks personal knowledge of the potential testimony of the identified witnesses.  (Pl.'s Opp'n 20:5-16.) The court overrules this objection.  Though Thomas's declaration does not state the exact basis of his knowledge, personal knowledge may be inferred from a declarant's position in a corporation.  <u>Self-Realization Fellowship Church v. Ananda Church of Self-Realization</u>, 206 F.3d 1322, 1330 (9th Cir. 2000). Thomas, as an officer and board member of ARCH, may reasonably testify regarding the identities of the individuals involved in the inventive efforts underlying the patents that ARCH owns and for which ARCH directed the patent prosecution (<u>see</u> Thomas Decl. ¶ 5).  <u>See</u> <u>Self-Realization Fellowship Church</u>, 206 F.3d at 1330 (providing that a corporate officer's personal knowledge of the identity of employees and their activities could be presumed); <u>Barthelemy v. Air Lines Pilots Ass'n</u>, 897 F.2d 999, 1018 (9th Cir. 1990) (inferring a chairman's personal knowledge of various corporate activities).

number of employees of the Chicago-based corporation SmartSignal who were apparently involved in the development of technology related to plaintiff's claims.  (Defs.' P. & A. 19:22-25; Thomas Decl. ¶ 13.)  This description, which does not specify the identity of the witnesses or their location, does not enable the court to assess any potential inconvenience to these witnesses.  See Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989) (affirming a denial of a motion to transfer venue when the moving party did not establish "who (specifically) it planned to call or the materiality of that testimony"); Cochran v. NYP Holdings, Inc., 58 F. Supp. 2d 1113, 1119-20 (C.D. Cal. 1998) (denying a motion to transfer when defendants failed to identify potential witnesses other than by their positions as employees of a corporation); E. & J. Gallo Winery v. F. & P. S.p.A., 899 F. Supp. 465, 467 (E.D. Cal. 1994) (Coyle, C.J.) (explaining that the court could not evaluate the impact of a transfer on witnesses who had only been identified by their employment function).

        As to potential witnesses who have been sufficiently identified, defendants list Wegerich, one of the three named inventors on the '399 and '038 patents, as well as three individuals who were involved in the efforts of the named inventors and/or are familiar with those inventors' interactions with Bickford.  (Thomas Decl. ¶¶ 7-9, 11.)  Defendants also list as witnesses two attorneys who oversaw the prosecution of the patents.  (Id. ¶¶ 10, 12.)  Plaintiff disputes that these witnesses will provide relevant testimony.  (Pl.'s Opp'n 20:2-4.)

        Given the early stage of the litigation, it is

difficult to determine what issues will be in dispute between the parties or which witnesses may indeed provide key testimony. Nonetheless, even assuming that all of the witnesses sufficiently identified by defendants will provide relevant testimony, defendants have failed to show that the convenience of witnesses clearly favors the Northern District of Illinois.  In particular, the potential witnesses identified by the parties are geographically dispersed.  For example, the two other named inventors on the patents, Gross and Jarman, reside significantly closer to the Eastern District of California in San Diego, California and Richland, Washington, respectively. (Carpenter Decl. ¶¶ 17-18; Bickford Decl. ¶ 24.)  This court is also more convenient for Bickford, an employee witness, who resides within the Eastern District of California.  (Bickford Decl. ¶¶ 2, 10.) A transfer of venue would thus only afford greater convenience to certain potential witnesses at the expense of others.[6]

   Similarly, with respect to the convenience of the parties, defendants have not shown that the Northern District of Illinois would be a relatively more convenient and less costly forum for this action.  Defendants argue that the Northern District is more convenient because all of the relevant documentary evidence in defendants' possession is located in Illinois.  (Defs.' P. & A. 19:1-9; Thomas Decl. ¶ 6.)  They also

---

[6] The geographic distribution of non-party witnesses also renders the availability of compulsory process a neutral factor in the court's analysis.  Both this court and the Northern District of Illinois would lack the power to subpoena at least some of the identified potential witnesses for trial.  See Fed. R. Civ. P. 45(b)(2)(A)-(B) (authorizing service of a subpoena within the district of the issuing court or within 100 miles of the place specified for hearing or trial).

10

1 argue that UC will suffer a disproportionate burden in litigating
2 away from its home forum, as it would be forced to divert funds
3 from its educational mission to pay for additional costs.
4 (Defs.' P. & A. 20:7-11.)  Plaintiff responds with equal force
5 that the Northern District of Illinois is an expensive and
6 inconvenient forum in light of plaintiff's limited resources and
7 the location of its sources of proof in this district.  (Pl.'s
8 Opp'n 13:24-25; Bickford Decl. ¶¶ 10, 21.)

9           Nevertheless, defendants contend that the court should
10 discount plaintiff's allegations of inconvenience given that
11 plaintiff must already bear the costs of litigating in Illinois
12 in order to prosecute the two previously filed Illinois state
13 court actions.  (Defs.' P. & A. 18:21-28.)  Plaintiff's filing of
14 those suits, however, does not necessarily demonstrate that
15 litigation in Illinois is convenient, especially since those
16 actions involve contracts with forum selection clauses specifying
17 Illinois state court.  (See id. at 18:10-11; Pl.'s Opp'n 9:23-27;
18 Fagel Decl. Ex. B ¶ 1.)  More importantly, there is no indication
19 that plaintiff's burden in litigating the instant suit before the
20 federal court in the Northern District of Illinois would be
21 reduced by the pendency of the Illinois state court actions.
22 First, and most obviously, the federal and state courts in
23 Illinois are different courts altogether.  Second, defendants
24 have not demonstrated that the sources of proof in this action
25 and the Illinois state actions will be the same or that

discovery, hearings, or trial dates could be coordinated.[7]

Overall, defendants have not shown that a transfer would accomplish anything more than a shift of inconveniences from some witnesses to others and from defendants to plaintiff. Considerations of convenience thus do not weigh in favor of transfer. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (upholding the district court's denial of a motion to transfer when "[t]he transfer would merely shift rather than eliminate the inconvenience"); Cochran, 58 F. Supp. 2d at 1120 ("[E]ither plaintiff and his witnesses will travel to New York, or Defendants and their witnesses will travel to California. A transfer will not be ordered if the result is merely to 'shift' the inconvenience from one party to another.").

### 3. Local Interest in the Case

In deciding a § 1404(a) motion, a court may also evaluate the public factors considered in a forum non conveniens analysis, including "the local interest in having localized controversies decided at home." Decker Coal Co., 805 F.2d at 843 (internal quotation marks omitted); accord DeFazio, 406 F. Supp. 2d at 1088-89. Defendants contend that Illinois has a greater interest in this action because the inventive work underlying the

---

[7] In addition, it does not appear that the interests of judicial economy would be served by a transfer to the Northern District of Illinois in the absence of a pending, related action before that court. Though defendants have identified two prior actions against EM in that court involving different patents (Defs.' P. & A. 11:28-12:6), they have not shown that the prospective transferee court has developed any particular familiarity with the issues or patents involved in this case. Cf. Amazon.com v. Cendant Corp., 404 F. Supp. 2d 1256, 1262 (W.D. Wash. 2005) (granting a motion to transfer venue because the transferee court was "already familiar with the complex technological issues and applicable law").

12

1  '399 and '038 patents was conducted in the Argonne National
2  Laboratory in the Chicago area and that certain of the agreements
3  between the parties were entered into in Illinois.  (Defs.' P. &
4  A. 17:25:28, 18:3-8.)  Bickford's alleged conception, however,
5  along with at least one disclosure of his regression SPRT
6  procedure to the named inventors and the consummation of the 203
7  contract, occurred in the Sacramento area of California.  (FAC ¶¶
8  32-33; Bickford Decl. ¶¶ 14, 20.)  The operative facts of this
9  case thus occurred in both Illinois and California, and since
10 federal law governs plaintiff's claims, neither this court or the
11 prospective transferee court has a greater familiarity with the
12 applicable law.  This factor consequently has a neutral effect on
13 the balance of considerations.

         4. <u>Conclusion</u>

15         After weighing the considerations of convenience to the
16 parties and witnesses and the interest of justice, the court
17 finds that defendants have failed to satisfy their burden of
18 demonstrating that the Northern District of Illinois is a more
19 convenient and appropriate forum for this action.  Accordingly,
20 the court will deny defendants' motion to transfer venue.

21    B.   <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

22         In the alternative to the motion to transfer venue,
23 ARCH moves to dismiss plaintiff's claims for lack of personal
24 jurisdiction pursuant to Rule 12(b)(2).  On July 6, 2009, after
25 the filing of ARCH's motion, the assigned Magistrate Judge
26 granted plaintiff's motion for limited jurisdictional discovery
27 as to "(1) defendant ARCH's substantial, continuing and
28 systematic contacts with the State of California and (2) the

13

1  alter ego relationship between defendant University of Chicago
2  and defendant ARCH." (Docket No. 31 at 5:8-10.)  In its reply
3  brief on the instant motion, ARCH contends that the Magistrate
4  Judge's Order granting jurisdictional discovery was in error and
5  invites the court to reconsider the Magistrate Judge's findings.
6  (Defs.' Reply 13:8-18.)  The court declines this invitation, as
7  the deadline for objections or requests for reconsideration of
8  the Magistrate Judge's July 6, 2009 Order expired before
9  defendants filed their reply brief on July 27, 2009.  See Fed. R.
10 Civ. P. 72(a); Local Rule 72-303(b).

           Accordingly, in light of the grant of jurisdictional
discovery, the court will deny ARCH's motion to dismiss for lack
of personal jurisdiction without prejudice to its renewal at the
close of jurisdictional discovery.  At the August 3, 2009 hearing
on the instant motions, counsel for plaintiff agreed that he
could complete the jurisdictional discovery ordered by the
Magistrate Judge by October 5, 2009.

           IT IS THEREFORE ORDERED that the motion to transfer
venue to the Northern District of Illinois be, and the same
hereby is, DENIED;

           IT IS FURTHER ORDERED that the motion to dismiss for
lack of personal jurisdiction be, and the same hereby is, DENIED
WITHOUT PREJUDICE to its renewal after the completion of the
jurisdictional discovery ordered by the Magistrate Judge;

           AND IT IS FURTHER ORDERED that the jurisdictional
///
///
///

14

discovery granted by the Magistrate Judge in his Order of July 6, 2009, be completed by October 5, 2009.

DATED:  August 5, 2009

*[signature: William B. Shubb]*

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE