UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| EXPERT MICROSYSTEMS, INC., | NO. CIV. 2:09-586 WBS JFM |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT |
| UNIVERSITY OF CHICAGO and ARCH DEVELOPMENT CORPORATION, | |
| Defendants. | |

----oo0oo----

Plaintiff Expert Microsystems ("EM") brought this action against defendants the University of Chicago ("UC") and ARCH Development Corporation ("ARCH") for correction of inventorship, 35 U.S.C. § 256, and ownership of United States Patents Numbers 5,987,399 ("'399 patent") and 6,202,038 ("'038 patent"). Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

I.  Factual and Procedural Background

1

Plaintiff EM is a small California corporation that provides systems for monitoring assets and equipment as well as related consulting services. (First Am. Compl. ("FAC") ¶ 1.) EM is the successor entity to ExperTech--a sole proprietorship of current EM President Randall L. Bickford--which was part of a joint venture created to obtain prime contracts with NASA.[1] (Id. ¶ 25.) From 1995 through 1996, as part of the process of preparing the proposal for the NASA contract, Bickford allegedly disclosed proprietary information to UC employees Stephan W. Wegerich and Kenneth C. Gross concerning Bickford's concept for a method of performing a regression sequential possibility ratio testing ("regression SPRT") procedure for a pair of sensors with signals that are linearly or non-linearly related. (Id. ¶¶ 32-33, 35, 44.) One such disclosure occurred in January 1996 when Wegerich and Gross traveled to Roseville, California, to meet with Bickford at ExperTech's offices. (Id. ¶ 32.)

Plaintiff alleges that at least part of the embodiments of Bickford's regression SPRT procedure are claimed in one or both of the '399 and '038 patents, which are directed to a method and apparatus for monitoring a source of data for determining an operating state of a working system. (Id. ¶¶ 23, 36, 45.) The '399 and '038 patents--issued on November 16, 1999, and March 13, 2001, respectively--list only Wegerich, Gross, and another person, Kristin K. Jarman, as inventors without naming Bickford

---

[1] On May 1, 1996, ExperTech incorporated in California as "Expert Microsystems, Inc.," and the successor entity acquired ExperTech's property rights and assumed the obligations of ExperTech. (FAC ¶¶ 37-38.) In addition, on September 27, 1996, EM was assigned all of ExperTech's rights and obligations under the joint venture's NASA contracts. (Id. ¶ 42.)

2

1 as an inventor. (Id. ¶¶ 16, 19, 46.)  The listed inventors
2 assigned ownership of the '399 and '038 patents to ARCH, an
3 affiliate of UC tasked with commercializing intellectual property
4 produced by UC scientists. (Id. ¶¶ 17, 20.)

5       In 1996, ExperTech/EM's joint venture applied for and
6 was ultimately awarded a prime contract for a project entitled
7 "Dynamics Sensor Data Validation for Reusable Launch Vehicle
8 Propulsion" that involved UC as a subcontractor. (Id. ¶¶ 34;
9 41.) The relationship between ExperTech/EM and UC continued for
10 a number of years and involved at least two cooperative research
11 and development agreements. (Id. ¶ 47.) On March 2, 2001,
12 plaintiff and UC entered into a license agreement (the "203
13 contract") by which plaintiff acquired the rights to use software
14 products that contained embodiments of the '399 patent. (See id.
15 ¶ 47; Bickford Decl. ¶¶ 4-5.) The 203 contract, signed by
16 Bickford, specifically mentioned that the '399 patent was being
17 licensed as part of the agreement but did not mention the '038
18 patent. (See Carpenter Decl. Ex. A-A § 1.3, Ex. A-C; Bickford
19 Decl. ¶ 6.)

20       On February 19, 2002, Bickford made an electronic prior
21 art search in the United State Patent and Trademark Office
22 ("USPTO") on behalf of plaintiff to find prior art to an
23 invention plaintiff was trying to get patented--a Surveillance
24 System and Method Having an Adaptive Sequential Probability Fault
25 Detection Test. (Bickford Decl. ¶ 10.) The prior art search
26 came up with eighteen patents, including the '399 and '038
27 patents at issue in this litigation. (Id. ¶¶ 14-16.) Plaintiff
28 purchased copies of the prior art patents and Bickford printed

3

each from the USPTO website. (<u>Id.</u> ¶¶ 17-18.)  Bickford alleges that he only saw the front page of each patent and did not review their contents at that time. (<u>Id.</u> ¶¶ 18-23.)  These copies were then provided by Bickford to Dennis DeBoo, plaintiff's patent agent, to use in preparing an Information Disclosure Statement for plaintiff's patent application ("the '835 application"). (<u>Id.</u> ¶¶ 24-25; DeBoo Decl. ¶ 5.)  DeBoo filed the Information Disclosure Statement for the '835 application on July 24, 2002. (DeBoo Decl. ¶ 8.)

On November 8, 2008, plaintiff received a letter from UC that terminated the 203 contract. (FAC ¶ 49.)  Plaintiff alleges that neither it nor Bickford read the contents of the '399 or '038 patents until after advised to do so by counsel after the termination of the 203 contract. (Bickford Decl. ¶¶ 28-30; Pl.'s Opp'n at 9:17-22.)  Plaintiff contends that it was only after reading the patents in December 2008 that Bickford became aware that he should have been listed as an inventor of the '038 and '399 patents. (Bickford Decl. ¶¶ 31-33.)  Plaintiff filed the instant action on March 2, 2009, alleging that Bickford invented or co-invented at least part of the various embodiments of the '399 and '038 patents. (<u>See</u> FAC ¶¶ 24, 55.)

II. <u>Discussion</u>

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could

4

permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. Id.

Once the moving party meets its initial burden, the non-moving party "may not rely merely on allegations or denials in its own pleading," but must go beyond the pleadings and, "by affidavits or as otherwise provided in [Rule 56,] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex Corp., 477 U.S. at 324; Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). In its inquiry, the court must view any inferences drawn from the underlying facts in the light most favorable to the nonmoving party, but may not engage in credibility determinations or weigh the evidence. Anderson, 477 U.S. at 255; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Defendants argue they are entitled to summary judgment because plaintiff's patent claims are barred by laches. Laches is an equitable defense that may bar an inventorship claim. See Lane & Bodley v. Locke, 150 U.S. 193, 201 (1893); see also A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028-29

(Fed. Cir. 1992). "The laches defense has two underlying elements: first, the [plaintiff's] delay in bringing suit must be 'unreasonable and inexcusable,' and second, the [defendant] must have suffered 'material prejudice attributable to the delay.'" Intirtool, Ltd. v. Texar Corp., 369 F.3d 1289, 1297 (Fed. Cir. 2004) (citation omitted).

The court must also consider a plaintiff's proffered justifications for delay and whether a defendant has unclean hands such that she is not entitled to an equitable defense. Aukerman, 960 F.2d at 1033. Courts have found a number of excuses for delay justified, including the presence of other litigation, ongoing negotiations with defendant, poverty, illness, wartime conditions, dispute over ownership of the patent, and a limited amount of infringement. Id. When evaluating a laches defense the court must therefore weigh and consider "the length of delay, the seriousness of prejudice, the reasonableness of excuses, and the defendant's conduct or culpability." Id. at 1034.

"[A] delay of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches." Serdarevic v. Advanced Med. Optics, Inc., 532 F.3d 1352, 1358 (Fed. Cir. 2008) (quoting Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1163 (Fed. Cir. 1993)). If the presumption applies, unreasonable delay and prejudice are automatically inferred. Serdarevic, 532 F.3d at 1359; see also Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1554 (Fed. Cir. 1996). Once a defendant establishes a presumption of laches on summary

6

judgment, the burden shifts to the plaintiff to "rebut the presumption of laches 'by offering evidence to show an excuse for the delay or that the delay was reasonable' or by offering evidence 'sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue.'" Serdarevic, 532 F.3d at 1359-60 (quoting Aukerman, 960 F.2d at 1038). "If the [plaintiff] presents a sufficiency of evidence which, if believed, would preclude a directed finding in favor of the [defendant], the presumption evaporates and the accused . . . is left to its proof." Aukerman, 960 F.2d at 1037-38.

    A.    <u>Applicability of Presumption and Reasonableness of Delay</u>

    Plaintiff argues that a presumption of laches is inapplicable and any delay in filing suit was reasonable because it did not have knowledge of the contents of the '399 and '038 patents until November 2008 at the earliest. When applying the six-year presumption of laches in an inventorship case, "the period of delay is measured from when the claimant had actual notice of the claim or would have reasonably been expected to inquire about the subject matter." Advanced Cardiovascular Sys., 988 F.2d at 1162; see also Intirtool, 369 F.3d at 1297-98; Wanlass v. Gen. Elec. Co., 148 F.3d 1334, 1337-38 (Fed. Cir. 1998).

    Defendants identify two plausible dates when the laches period began to run on plaintiff's claims. The first is on March 2, 2001, when plaintiff signed the 203 contract with UC that licensed use of software containing embodiments of the '399 patent. Plaintiff contends that despite the 203 contract's

reference to the '399 patent and plaintiff's knowledge the patent's issuance, it remained unaware of the patent's content because plaintiff had already been using the software in the contract for several years and therefore felt no need to investigate the '399 patent.  (See Bickford Decl. ¶¶ 4-7.) Plaintiff may reasonably have failed to realize the software it had been using for several years contained an embodiment of '399 patent.  A disputed issue of material fact therefore exists such that the court cannot find that the laches period began running in March 2001.

The second date offered by defendants is February 19, 2002, when plaintiff owned copies of the '399 and '038 patents after Bickford printed copies of each patent as part of a prior art search for the '835 application.  (See Englund Decl. Ex. A at 3:19-28, 5:19-28; Ex. B at 3:24-4:3, 7:19-28; Bickford Decl. ¶ 17.)  In his declaration, Bickford states that he saw the front-page of each patent while he was printing the prior art patents, but did not "read or evaluate the content or claims of the '399 Patent and the '038 Patent."  (Bickford Decl. ¶¶ 18-19.) Bickford then gave copies of the patents to DeBoo, who supplied copies of them to the USPTO in the '835 application.

For purposes of this motion, plaintiff equates whatever knowledge Bickford had with that of EM.  Even if plaintiff is correct and Bickford only looked at the first page of each patent, he should have easily noticed that the '399 patent's first page states that the invention includes "activating a second method for performing a [regression SPRT] . . . with signals which are linearly or non-linearly related," the exact

invention plaintiff claims Bickford created.  (Defs.' Reply Ex. A ('399 Patent).)  Plaintiff was sufficiently put on notice of his potential inventorship claims by reading the first page of the patents.  "The Supreme Court has consistently imputed to parties who failed to examine readily available information the knowledge contained in it and the results of inquiries that the knowledge would have motivated a reasonable man to conduct."  Wanlass, 148 F.3d at 1338-39 (collecting cases).  Even though Bickford claims he did not read the claims and specifications of each patent, the explicit reference to the regression SPRT process which the FAC claims contained Bickford's invention should have lead him to inquire as to whether he had an inventorship claim to the patents at issue.

    Plaintiff could have easily read the prior art patents within its possession and discovered with reasonable diligence that it may have had an inventorship claim against defendants. Plaintiff's failure to investigate its potential claim after Bickford saw information that warranted further inquiry into its potential ownership of the patents at issue is unreasonable and therefore insufficient to absolve plaintiff of knowledge of the contents of the '399 and '038 patents for purposes of laches. See Wanlass, 148 F.3d at 1338-39; Advanced Cardiovascular Sys., 988 F.2d at 1162 (holding the laches period begins when the plaintiff "would reasonably be expected to inquire about the subject matter" of the claim at issue); Potash Co. of Am. v. Int'l Minerals & Chem. Corp., 213 F.2d 153, 155 (10th Cir. 1954) ("Laches will not be imputed to one who has been justifiably ignorant of facts which create his right or cause of action.  But

ignorance will not of itself excuse delay. The party must be diligent and make such inquiry and investigation as the circumstances reasonably suggest, and the means of knowledge are generally equivalent to actual knowledge.") (citations omitted).

Defendants have also presented undisputed evidence that Bickford previously acknowledged his awareness of the '399 and '038 patents in the Information Disclosure Statement for the '835 application submitted by DeBoo to the USPTO on July 24, 2002. The Information Disclosure Statement states that "[t]he patents and publications listed on the appended PTO 1449 form reflect the state of the art of which applicant [Bickford] is currently aware." (DeBoo Decl. Ex. A at 1.) Bickford in effect represented to the USPTO that he had sufficient knowledge of the '399 and '038 patents to conclude that they constituted prior art of his invention. See Glaxo, Inc. v. Novopharm Ltd., 52 F.3d 1043, 1052 (Fed. Cir. 1995) ("[T]he information disclosed in the inventor's patent application must be that which is actually known to him."). Although Bickford now declares that he did not actually know the contents of the '399 and '038 patents at the time, it is clear both that he was on notice that the patents may have included his invention and that it was unreasonable for him to be unaware of their contents when he submitted the '835 application to the PTO. Accordingly, the court finds that the clock on plaintiff's claims to ownership of the '399 and '038 patents began on February 19, 2002, when Bickford printed out copies of the patents and plaintiff assumed ownership of these copies. Since plaintiff filed this action over six years after this date, the presumption of laches applies.

1      Plaintiff's arguments to rebut the presumption that its
2 delay in bringing this suit was unreasonable are identical to its
3 arguments as to why the presumption is inapplicable.  For the
4 same reasons as articulated above, the court finds that plaintiff
5 has not presented any evidence indicating why its delay in
6 bringing suit was reasonable because it should have known of the
7 contents of the patents during the filing of plaintiff's
8 Information Disclosure Statement for the '835 application,
9 despite its alleged failure to actually discover its claim.
10 Plaintiff has not provided evidence of any extenuating
11 circumstances that would justify its substantial delay in filing
12 this action.  See Aukerman, 960 F.2d at 1033 (listing excuses for
13 delay courts have found reasonable).  Accordingly, plaintiff has
14 not rebutted the presumption of an unreasonable delay.

15      B.   Prejudice

16      A plaintiff may also rebut a presumption of laches by
17 presenting evidence to put whether defendant suffered material
18 prejudice from the delay in filing the suit in issue.  See
19 Serdarevic, 532 F.3d at 1359-60.  Material prejudice can be
20 evidentiary or economic.  Aukerman, 960 F.2d at 1033.  To defeat
21 summary judgment, plaintiff must rebut the presumption of
22 prejudice with respect to both economic and evidentiary
23 prejudice.  See Serdarevic, 532 F.3d at 1360; Abbott Diabetes
24 Care, Inc. v. Roche Diagnostics Corp., No. C05-03117 MJJ, 2007 WL
25 1241928, at *7 (N.D. Cal. April 27, 2007).

26      Economic prejudice may arise when a defendant suffers
27 "the loss of monetary investments or incur[s] damages which
28 likely would have been prevented by earlier suit."  Aukerman, 960

11

F.2d at 1033.  These monetary losses may not simply be the damages that may be awarded for a finding in favor of the plaintiff, rather the court should look for "a change in the economic position of the alleged infringer during the period of delay" when evaluating economic prejudice.  Id. (emphasis in original).  "The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity."  Hemstreet v. Computer Entry Sys. Corp., 972 F.2d 1290, 1294 (Fed. Cir. 1992).

Because of the presumption of prejudice, plaintiff bears the burden of production to raise a genuine factual issue as to whether economic prejudice exists.  See Serdarevic, 532 F.3d at 1359-60.  Plaintiff does not offer any evidence on this point, outside of arguing that defendants did not suffer economic prejudice because plaintiff paid $26,063 in royalties to defendants under the 203 contract and defendants entered into license agreements with third parties to practice the inventions in the '399 and '038 patents during the delay period.  (See Pl.'s Opp'n at 13:25-16:12; Carpenter Decl. Ex. C ¶ 60.)  Plaintiff's arguments do not demonstrate that defendants did not suffer economic prejudice.  To the contrary, the limited evidence presented by plaintiff indicates that defendants likely did suffer economic prejudice, since they economically invested in the '399 and '038 patents by entering into license agreements with third parties to use the patents.  See Moore v. Broadcom Corp., No. C06-05647 MJJ, 2008 WL 425932, at *7 fn.4 (N.D. Cal. Feb. 14, 2008) (defendant's evidence that it licensed the patent at issue to third parties supported a finding of economic

12

prejudice). Accordingly, plaintiff has not met its burden of producing evidence to create a disputed material issue of fact as to economic prejudice.

This finding is bolstered by the defendants' submission of evidence that plaintiff's delay in filing suit did in fact cause economic prejudice. Specifically, ARCH entered into a license agreement with SmartSignal Corporation ("SmartSignal") for a portfolio of intellectual property rights, including the '399 and '038 patents during the delay period. (See Thomas Decl. Ex. A.) The license agreement gave SmartSignal the exclusive right for use of the patents and also represented that defendants were not a party to any lawsuit over ownership of the licensed patents. (Id. Ex. A at 2, 5.) The license agreement also has a complicated set of royalty pay outs among the twelve different inventors involved in the creation of the thirty-two different patents entailed in the intellectual property rights bundle. (Id. at ¶ 9.) Plaintiff's delay in filing suit allowed defendants to enter into license agreements into which they claimed to grant exclusive use of the '399 and '038 patents and received additional compensation from the inclusion of these patents in their license agreement with SmartSignal. (Id.) Defendants changed their economic position by making these guarantees to SmartSignal, which may leave them open to a suit for breach of contract if plaintiff succeeds on its claims. Defendants would also need to completely alter their complicated formula for royalty payments to the inventors of the patents in the SmartSignal license and would force these inventors to disgorge portions of the royalty payments they received for the

13

last eleven years, not knowing they were being overpaid.  (Id.)

Defendants' evidence supports the position that it made investments in licensing the '399 and '038 patents during plaintiff's delay in filing suit such that it may suffer economic prejudice were the case allowed to proceed.  Since plaintiffs have failed to present evidence to rebut the presumption of economic prejudice, the court need not reach the issue of evidentiary prejudice and will apply the doctrine of laches to plaintiff's claims.  See Serdarevic, 532 F.3d at 1360; Abbott Diabetes Care, 2007 WL 1241928, at *7.

C. Unclean Hands

Under the unclean hands doctrine, "[e]ven if unable to overcome the presumption, a [plaintiff] may be able to preclude application of the laches defense with proof that the [defendant] was itself guilty of misdeeds towards the [plaintiff]." Aukerman, 960 F.2d at 1038.  To succeed on an unclean hands defense, a plaintiff must show that the defendant has "engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor."  Id. at 1033 (citing Bott v. Four Star Corp., 807 F.2d 1567, 1576 (Fed. Cir. 1986)).  In an inventorship action, "a plaintiff relying on the unclean hands doctrine to defeat a defense of laches must show not only that the defendant engaged in misconduct, but moreover that the defendant's misconduct was responsible for the plaintiff's delay in bringing suit." Serdarevic, 532 F.3d at 1361.

In this case, plaintiff argues that it is entitled to an unclean hands defense because defendants engaged in egregious conduct when they failed to name Bickford as the inventor of the

14

two patents, thereby defrauding Bickford and the USPTO.  (See Pl.'s Opp'n 17:3-8.)  Plaintiff's unclean hands defense fails because it simply rehashes the basis of its inventorship claims and does not indicate why any of defendants' alleged misconduct is responsible for plaintiff's delay in filing suit.  In Serdarevic, the Federal Circuit rejected an unclean hands defense almost identical to plaintiff's argument, noting that, "[i]f the failure to name an inventor were sufficiently 'egregious conduct' to give rise to an unclean hands claim, then laches would never be available as a defense to an inventorship claim."  532 F.3d at 1361.  Since plaintiff has not provided evidence that defendants' alleged misconduct was responsible for its delay in filing suit, defendants' laches defense is not precluded by unclean hands.

       IT IS THEREFORE ORDERED that defendants' motion for summary judgment be, and the same hereby is, GRANTED.

DATED:  April 1, 2010

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE